**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ZOLTAN BODAS,                               )
3438 West Vogel Avenue                      )          Civil Action No. _____
Phoenix, AZ 85051                           )
                                            )
          and                               )
                                            )
MICKEY CHAMBERS,                            )
1540 Loblolly Drive                         )
Axton, VA 24054                             )
                                            )
          and                               )
                                            )
JAMES A. GRAY,                              )
19749 Stansbury                             )
Detroit, MI 48235                           )
                                            )
          and                               )
                                            )
RAYMOND HARRIS,                             )
110 Fiddlers Cove                           )
Brunswick, GA 31523                         )
                                            )
          and                               )
                                            )
ROLAND T. HOBDY,                            )
Post Office Box 1303                        )
Ocoee, FL 34761                             )
                                            )
          and                               )
                                            )
LARRY E. MELZER,                            )
9059 Sea Lane, S.W.                         )
Sunset Beach, NC 28468                      )
                                            )
          and                               )
                                            )
MISTY WHITEMAN,                             )
5302 Royal Palm Avenue                      )
Sarasota, FL 34234                          )
                                            )
          Plaintiffs,                       )
                                            )
v.                                          )

MEDTRONIC, INC.,                               )
710 Medtronic Parkway,                         )
Minneapolis, MN, 55432                         )
                                               )
                Defendant.                     )

## NOTICE OF REMOVAL

Defendant Medtronic, Inc. ("Medtronic"), a Minnesota corporation with its principal

place of business at 710 Medtronic Parkway, Minneapolis, Minnesota, by and through its

undersigned counsel, hereby provides notice pursuant to 28 U.S.C. § 1446 of its removal of the

above-captioned case from the Superior Court for the District of Columbia to the United States

District Court for the District of Columbia. The grounds for removal are as follows:

1.    Plaintiffs commenced this action by filing a complaint on July 28, 2008 in the

Superior Court for the District of Columbia, and the case was docketed at 08-5482.

2.    Copies of the complaint and summons were served upon Medtronic on July 31,

2008. A true and correct copy of the complaint and summons are attached hereto as Exhibit A.

No other pleadings or papers have been filed in this litigation.

3.    Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within 30 days

of the service upon Medtronic of the complaint and summons. Since Medtronic is filing this

Notice on August 19, 2008, removal is timely.

4.    The time for Medtronic to answer, move, or otherwise plead with respect to the

complaint has not yet expired.

5.    Concurrent with the filing of this Notice, Medtronic is serving this Notice on

Plaintiffs' counsel and filing a copy of the Notice with the Clerk of the Superior Court for the

District of Columbia. Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(d) and 1441(a),

because the United States District Court for the District of Columbia is the federal judicial

district embracing the Superior Court for the District of Columbia, where this action was originally filed.

6.    By filing a Notice of Removal in this matter, Medtronic does not waive its right to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Medtronic specifically reserves the right to assert any defenses and/or objections to which it may be entitled.

## DIVERSITY OF CITIZENSHIP

7.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists where (1) the suit is between citizens of different states, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. *Greene v. Am. Fed'n of Gov't Employees*, No. 05-0408 (RMU), 2005 U.S. Dist. LEXIS 19983, at *4 (D.D.C. 2002).

8.    Complete diversity exists between the parties to this action. Medtronic is a Minnesota corporation with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota, and thus is a citizen of Minnesota. *See* Complaint (caption), Exhibit B hereto (Affidavit of James N. Spolar); *Branson v. Medtronic, Inc.*, No. 5:06-cv-332-Oc-10GRJ, 2007 WL 170094, at *4 (M.D. Fla. Jan. 18, 2007) (denying plaintiff's motion to remand following removal by Medtronic on the ground that Medtronic's principal place of business is in Minnesota).

9.    Upon information and belief, each of the Plaintiffs is a citizen of a state other than Minnesota (Arizona, Virginia, Michigan, Georgia, Florida and North Carolina). *See* Complaint (caption).

10.    Accordingly, complete diversity exists in this action.

## AMOUNT IN CONTROVERSY

11.     The amount in controversy requirement of 28 U.S.C. § 1332 is also satisfied. Under 28 U.S.C. § 1332(a), the amount in controversy in a case where federal jurisdiction is based on diversity of citizenship must exceed $75,000, exclusive of interest and costs. *Nwachukwu v. Karl*, 223 F.Supp.2d 60, 65 (D.D.C. 2002).   "Punitive damages are properly considered as part of the amount in controversy." *Id.* at 66.

12.     Here, Plaintiffs each seek damages far in excess of $75,000.   Each Plaintiff alleges significant injuries caused by Medtronic's leads.  (Compl. ¶¶ 7, 33, 59, 85, 111, 137, and 163) and, indeed, each Plaintiff specifically "demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs." *Id.* at pp. 29-30.   The amount in controversy requirement is plainly satisfied where, as here, a plaintiff specifically requests damages in an amount greater than the jurisdictional minimum.   *E.g., Windsor v. Whitman-Walker Clinic, Inc.*, 512 F.Supp.2d 66, 68 n.3 (D.D.C. 2007) (recognizing diversity jurisdiction for removal where plaintiff sought damages of $3,000,000).

13.     Because both of the requirements for federal diversity jurisdiction are satisfied, this case is removable by Medtronic.

WHEREFORE, Notice is given that this action is removed from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia.

DATED:  August19, 2008

Respectfully submitted,

MEDTRONIC, INC.


By: _____
    One of its Attorneys

Michael E. Lackey, Jr.
David M. Gossett
Mayer Brown LLP
1909 K Street, Northwest
Washington, D.C. 20006-1101
mlackey@mayerbrown.com
dgossett@mayerbrown.com
(202) 263-3000 (t)
(202) 263-3300 (f)

*Attorneys for Defendant*
*Medtronic, Inc.*

## CERTIFICATE OF SERVICE

I, David M. Gossett, an attorney, certify that I caused a copy of the attached Defendant, Medtronic, Inc.'s Notice of Removal to be served by sending the same by U.S. mail, postage prepaid, on August 19, 2008, addressed to the following:

> Aaron M. Levine
> Brandon J. Levine
> Renee L. Robinson-Meyer
> Steven J. Lewis
> Benjamin J. Cooper
> 1320 19th Street, N.W., Suite 500
> Washington, D.C. 20036
> Fax: (202) 833-8046

David M. Gossett
D.C. and D.D.C. Bar No. 468390

# EXHIBIT A

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

| | |
|---|---|
| ZOLTAN BODAS, et al. | |
| *Plaintiff* | **08–0005482** |
| VS. | Civil Action No. |
| MEDTRONIC, INC. | |
| *Defendant* | |

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| | |
|---|---|
| Aaron M. Levine | |
| Name of Plaintiff's Attorney | By _____ |
| 1320 Nineteenth St., NW, Fifth Floor | Deputy Clerk |
| Address | |
| Washington, DC 20036 | |
| (202) 833-8040 | Date    JUL 28 2008 |
| Telephone | |

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98    NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

ZOLTAN BODAS,
3438 West Vogel Avenue
Phoenix, AZ 85051

and

MICKEY CHAMBERS,
1540 Loblolly Drive
Axton, VA 24054

and

JAMES A. GRAY,
19749 Stansbury
Detroit, MI 48235

and

RAYMOND HARRIS,
110 Fiddlers Cove
Brunswick, GA 31523

and

ROLAND T. HOBDY,
P.O. Box 1303
Ocoee, FL 34761

and

LARRY E. MELZER,
9059 Sea Lane, S.W.
Sunset Beach, NC 28468

and

MISTY WHITEMAN,
5302 Royal Palm Avenue
Sarasota, FL 34234

                                Plaintiffs,

08-0005482



RECEIVED
Civil Clerk's Office

JUL 2 8 2008

Superior Court of the
District of Columbia
Washington, D.C.

v.                                        }
                                          }
MEDTRONIC, INC.,                          }
710 Medtronic Parkway                     }
Minneapolis, MN 55432                     }
w/s/o CT CORPORATION SYSTEM               }
     1015 15th Street, NW, #1000          }
     Washington, DC 20005                 }
                                          }
                    Defendant.            }
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~}

## COMPLAINT
### (ICD Litigation – Products Liability, Punitive Damages)

1.      Jurisdiction is founded upon 11 D.C. Code §921 (1981 ed.).

2.      At all relevant times, Defendant Medtronic, Inc. ("Medtronic") is engaged, or has been engaged, in the testing, manufacturing, licensing, marketing, selling, promoting, and distributing, either directly or indirectly through third parties, of implantable cardioverter defibrillators ("ICDs") and/or ICD leads throughout the United States, and is doing business in the District of Columbia.

### ADOPTION BY REFERENCE
### OF MULTI-DISTRICT LITIGATION "MASTER COMPLAINT"

3.      Plaintiffs adopt and incorporate by reference the relevant portions of the Master Complaint on file in the case styled In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig., No. 08-1905, now pending in the United States District Court for the District of Minnesota.

### COUNT I
### (Negligence – Zoltan Bodas)

4.      On or about September 10, 2007, Plaintiff Zoltan Bodas purchased and was implanted with a Medtronic Model D154VWC ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at St. Joseph's Hospital in Phoenix, Arizona.

5.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

6.    As a result of Medtronic's defective ICD leads, Plaintiff Zoltan Bodas required surgery to replace said defective lead on or about December 20, 2007, at the John C. Lincoln Hospital in Phoenix, Arizona.

7.    As a result of Medtronic's defective ICD, Zoltan Bodas suffered injuries, including, but not limited to, inappropriate shocks, lead replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

8.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT II
### (Strict Liability – Zoltan Bodas)

9.    All of the allegations in Count I are reincorporated and alleged herein by reference.

10.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Zoltan Bodas.

11.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Zoltan Bodas.

3

12.    The subject ICD lead implanted in Plaintiff Zoltan Bodas was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

13.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Zoltan Bodas, in the condition in which it sold them.

14.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

15.    Said product was defective and unreasonably dangerous when put to its intended use.

16.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Zoltan Bodas was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

17.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Zoltan Bodas for his ICD lead-related injuries, losses, and damages.

<div align="center">

**COUNT III**
**(Breach of Warranty – Zoltan Bodas)**

</div>

18.    All of the allegations contained in Counts I and II are realleged and incorporated herein by reference.

19.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

<div align="center">4</div>

20.    Medtronic knew, or should have known, that patients, including Plaintiff Zoltan Bodas and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

21.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

22.    As a direct result of the breach of warranties by Medtronic, Plaintiff Zoltan Bodas has been injured as aforesaid.

## COUNT IV
### (Misrepresentation – Zoltan Bodas)

23.    All of the allegations contained in Counts I, II, and III are realleged and incorporated herein by reference.

24.    Medtronic represented to patients, including Plaintiff Zoltan Bodas and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

25.    Plaintiff Zoltan Bodas and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

26.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

27.    As a direct result of said false representations by Medtronic, Plaintiff Zoltan Bodas was injured as aforesaid.

## COUNT V
### (Punitive Damages – Zoltan Bodas)

28.    All of the allegations contained in Counts I, II, III, and IV are realleged and incorporated herein by reference.

29.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Zoltan Bodas's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Zoltan Bodas by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT VI
### (Negligence – Mickey Chambers)

30.    On or about November 2, 2004, Plaintiff Mickey Chambers purchased and was implanted with a Medtronic Marquis VR ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at Mose's Cone Hospital in Greensboro, North Carolina.

31.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

32.    As a result of Medtronic's defective ICD leads, Plaintiff Mickey Chambers requires ongoing medical monitoring and may require surgery to replace said defective device.

33.    As a result of Medtronic's defective ICD leads, Plaintiff Mickey Chambers suffered injuries, including, but not limited to, anxiety from the current and future status of his

6

ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

34.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICDs and ICD leads.

## COUNT VII
### (Strict Liability – Mickey Chambers)

35.    All of the allegations in Count VI are reincorporated and alleged herein by reference.

36.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Mickey Chambers.

37.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Mickey Chambers.

38.    The subject ICD lead implanted in Plaintiff Mickey Chambers was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

39.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Mickey Chambers, in the condition in which it sold them.

40.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

41.    Said product was defective and unreasonably dangerous when put to its intended use.

42.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Mickey Chambers was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

43.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Mickey Chambers for his ICD lead-related injuries, losses, and damages.

<div align="center">

**COUNT VIII**
**(Breach of Warranty – Mickey Chambers)**

</div>

44.    All of the allegations contained in Counts VI and VII are realleged and incorporated herein by reference.

45.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

46.    Medtronic knew, or should have known, that patients, including Plaintiff Mickey Chambers and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

47.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

48.    As a direct result of the breach of warranties by Medtronic, Plaintiff Mickey Chambers has been injured as aforesaid.

## COUNT IX
### (Misrepresentation – Mickey Chambers)

49.    All of the allegations contained in Counts VI, VII, and VIII are realleged and incorporated herein by reference.

50.    Medtronic represented to patients, including Plaintiff Mickey Chambers and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

51.    Plaintiff Mickey Chambers and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

52.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

53.    As a direct result of said false representations by Medtronic, Plaintiff Mickey Chambers was injured as aforesaid.

## COUNT X
### (Punitive Damages – Mickey Chambers)

54.    All of the allegations contained in Counts VI, VII, VIII and IX are realleged and incorporated herein by reference.

55.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Mickey Chambers's implant, had actual and constructive notice that the subject

9

ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Mickey Chambers by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XI
### (Negligence – James Gray)

56.     On or about September 7, 2006, Plaintiff James Gray purchased and was implanted with a Medtronic Model 5076-58 ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at Harper University Hospital in Detroit, Michigan.

57.     On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

58.     As a result of Medtronic's defective ICD leads, Plaintiff James Gray required surgery to replace said defective lead on or about June 11, 2008, at the William Beaumont Hospital in Royal Oak, Michigan.

59.     As a result of Medtronic's defective ICD, James Gray suffered injuries, including, but not limited to, inappropriate shocks, lead replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

60.     Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent

design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

<div align="center">

**COUNT XII**
**(Strict Liability – James Gray)**

</div>

61.     All of the allegations in Count XI are reincorporated and alleged herein by reference.

62.     Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff James Gray.

63.     While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff James Gray.

64.     The subject ICD lead implanted in Plaintiff James Gray was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

65.     Medtronic expected the ICD leads to reach consumers, including Plaintiff James Gray, in the condition in which it sold them.

66.     Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

67.     Said product was defective and unreasonably dangerous when put to its intended use.

<div align="center">11</div>

68.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff James Gray was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

69.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff James Gray for his ICD lead-related injuries, losses, and damages.

## COUNT XIII
### (Breach of Warranty – James Gray)

70.    All of the allegations contained in Counts XI and XII are realleged and incorporated herein by reference.

71.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

72.    Medtronic knew, or should have known, that patients, including Plaintiff James Gray and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

73.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

74.    As a direct result of the breach of warranties by Medtronic, Plaintiff James Gray has been injured as aforesaid.

## COUNT XIV
### (Misrepresentation – James Gray)

75.    All of the allegations contained in Counts XI, XII, and XIII are realleged and incorporated herein by reference.

76.    Medtronic represented to patients, including Plaintiff James Gray and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

77.    Plaintiff James Gray and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

78.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

79.    As a direct result of said false representations by Medtronic, Plaintiff James Gray was injured as aforesaid.

## COUNT XV
### (Punitive Damages – James Gray)

80.    All of the allegations contained in Counts XI, XII, XIII, and XIV are realleged and incorporated herein by reference.

81.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff James Gray's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff James Gray by knowingly and

intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XVI
### (Negligence – Raymond Harris)

82.    On or about December 2, 2004, Plaintiff Raymond Harris purchased and was implanted with a Medtronic Model 7303 ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at St. Vincent's Hospital in Jacksonville, Florida.

83.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

84.    As a result of Medtronic's defective ICD leads, Plaintiff Raymond Harris required surgery to replace said defective lead on or about June 27, 2008, at St. Vincent's Hospital in Jacksonville, Florida.

85.    As a result of Medtronic's defective ICD, Raymond Harris suffered injuries, including, but not limited to, inappropriate shocks, lead replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

86.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT XVII
### (Strict Liability – Raymond Harris)

87.    All of the allegations in Count XVI are reincorporated and alleged herein by reference.

88.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads,

which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Raymond Harris.

89.     While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Raymond Harris.

90.     The subject ICD lead implanted in Plaintiff Raymond Harris was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

91.     Medtronic expected the ICD leads to reach consumers, including Plaintiff Raymond Harris, in the condition in which it sold them.

92.     Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

93.     Said product was defective and unreasonably dangerous when put to its intended use.

94.     As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Raymond Harris was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

95.     By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Raymond Harris for his ICD lead-related injuries, losses, and damages.

## COUNT XVIII
### (Breach of Warranty – Raymond Harris)

96.     All of the allegations contained in Counts XVI and XVII are realleged and incorporated herein by reference.

97.     At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

98.     Medtronic knew, or should have known, that patients, including Plaintiff Raymond Harris and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

99.     At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

100.    As a direct result of the breach of warranties by Medtronic, Plaintiff Raymond Harris has been injured as aforesaid.

## COUNT XIX
### (Misrepresentation – Raymond Harris)

101.    All of the allegations contained in Counts XVI, XVII, and XVIII are realleged and incorporated herein by reference.

102.    Medtronic represented to patients, including Plaintiff Raymond Harris and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

103.    Plaintiff Raymond Harris and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

104.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

105.    As a direct result of said false representations by Medtronic, Plaintiff Raymond Harris was injured as aforesaid.

### COUNT XX
### (Punitive Damages – Raymond Harris)

106.    All of the allegations contained in Counts XVI, XVII, XVIII and XIX are realleged and incorporated herein by reference.

107.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Raymond Harris's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Raymond Harris by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XXI
### (Negligence – Roland Hobdy)

108.    On or about September 5, 2007, Plaintiff Roland Hobdy purchased and was implanted with a Medtronic Model D154VWC ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at the James A. Hadley Veterans' Hospital in Tampa, Florida.

109.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

110.    As a result of Medtronic's defective ICD leads, Plaintiff Roland Hobdy required surgery to replace said defective lead on or about July 5, 2008, at Orlando Regional Medical Center in Orlando, Florida.

111.    As a result of Medtronic's defective ICD, Roland Hobdy suffered injuries, including, but not limited to, inappropriate shocks, burns, lead replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

112.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT XXII
### (Strict Liability – Roland Hobdy)

113.    All of the allegations in Count XXI are reincorporated and alleged herein by reference.

114.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Roland Hobdy.

18

115.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Roland Hobdy.

116.    The subject ICD lead implanted in Plaintiff Roland Hobdy was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

117.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Roland Hobdy, in the condition in which it sold them.

118.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

119.    Said product was defective and unreasonably dangerous when put to its intended use.

120.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Roland Hobdy was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

121.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Roland Hobdy for his ICD lead-related injuries, losses, and damages.

## COUNT XXIII
### (Breach of Warranty – Roland Hobdy)

122.    All of the allegations contained in Counts XXI and XXII are realleged and incorporated herein by reference.

19

123.   At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

124.   Medtronic knew, or should have known, that patients, including Plaintiff Roland Hobdy and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

125.   At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

126.   As a direct result of the breach of warranties by Medtronic, Plaintiff Roland Hobdy has been injured as aforesaid.

<div align="center">

### COUNT XXIV
### (Misrepresentation – Roland Hobdy)

</div>

127.   All of the allegations contained in Counts XXI, XXII, and XXIII are realleged and incorporated herein by reference.

128.   Medtronic represented to patients, including Plaintiff Roland Hobdy and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

129.   Plaintiff Roland Hobdy and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

130.   At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or

<div align="center">20</div>

unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

131.    As a direct result of said false representations by Medtronic, Plaintiff Roland Hobdy was injured as aforesaid.

## COUNT XXV
### (Punitive Damages – Roland Hobdy)

132.    All of the allegations contained in Counts XXI, XXII, XXIII, and XXIV are realleged and incorporated herein by reference.

133.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Roland Hobdy's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Roland Hobdy by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XXVI
### (Negligence – Larry Melzer)

134.    On or about March 5, 2007, Plaintiff Larry Melzer purchased and was implanted with a Medtronic D154 ICD with a Sprint Fidelis lead model 6949.  The device and leads were implanted at the Munster Community Hospital in Munster, Indiana.

135.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

21

136.    As a result of Medtronic's defective ICD leads, Plaintiff Larry Melzer requires ongoing medical monitoring and may require surgery to replace said defective device.

137.    As a result of Medtronic's defective ICD leads, Plaintiff Larry Melzer suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

138.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT XXVII
### (Strict Liability – Larry Melzer)

139.    All of the allegations in Count XXVI are reincorporated and alleged herein by reference.

140.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Larry Melzer.

141.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Larry Melzer.

142.    The subject ICD lead implanted in Plaintiff Larry Melzer was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

22

143.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Larry Melzer, in the condition in which it sold them.

144.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

145.    Said product was defective and unreasonably dangerous when put to its intended use.

146.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Larry Melzer was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

147.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Larry Melzer for his ICD lead-related injuries, losses, and damages.

## COUNT XXVIII
### (Breach of Warranty – Larry Melzer)

148.    All of the allegations contained in Counts XXVI and XXVII are realleged and incorporated herein by reference.

149.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

150.    Medtronic knew, or should have known, that patients, including Plaintiff Larry Melzer and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

23

151.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

152.    As a direct result of the breach of warranties by Medtronic, Plaintiff Larry Melzer has been injured as aforesaid.

## COUNT XXIX
### (Misrepresentation – Larry Melzer)

153.    All of the allegations contained in Counts XXVI, XXVII, and XXVIII are realleged and incorporated herein by reference.

154.    Medtronic represented to patients, including Plaintiff Larry Melzer and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

155.    Plaintiff Larry Melzer and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

156.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

157.    As a direct result of said false representations by Medtronic, Plaintiff Larry Melzer was injured as aforesaid.

## COUNT XXX
### (Punitive Damages – Larry Melzer)

158.    All of the allegations contained in Counts XXVI, XXVII, XXVIII, and XXIX are realleged and incorporated herein by reference.

24

159.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Larry Melzer's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Larry Melzer by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

### COUNT XXXI
### (Negligence – Misty Whiteman)

160.    On or about January 6, 2006, Plaintiff Misty Whiteman purchased and was implanted with a Medtronic Model 7278 ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at Sarasota Memorial Hospital in Sarasota, Florida.

161.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

162.    As a result of Medtronic's defective ICD leads, Plaintiff Misty Whiteman required surgery to replace said defective lead on or about May 5, 2008, at Sarasota Memorial Hospital in Sarasota, Florida.

163.    As a result of Medtronic's defective ICD, Misty Whiteman suffered injuries, including, but not limited to, inappropriate shocks, lead replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

164.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT XXXII
### (Strict Liability – Misty Whiteman)

165.    All of the allegations in Count XXXI are reincorporated and alleged herein by reference.

166.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Misty Whiteman.

167.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Misty Whiteman.

168.    The subject ICD lead implanted in Plaintiff Misty Whiteman was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

169.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Misty Whiteman, in the condition in which it sold them.

170.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

171.    Said product was defective and unreasonably dangerous when put to its intended use.

172.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Misty Whiteman was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

173.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Misty Whiteman for her ICD lead-related injuries, losses, and damages.

<u>COUNT XXXIII</u>
**(Breach of Warranty – Misty Whiteman)**

174.    All of the allegations contained in Counts XXXI and XXXII are realleged and incorporated herein by reference.

175.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

176.    Medtronic knew, or should have known, that patients, including Plaintiff Misty Whiteman and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

177.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

178.    As a direct result of the breach of warranties by Medtronic, Plaintiff Misty Whiteman has been injured as aforesaid.

## COUNT XXXIV
### (Misrepresentation – Zoltan Bodas)

179.    All of the allegations contained in Counts XXXI, XXXII, and XXXIII are realleged and incorporated herein by reference.

180.    Medtronic represented to patients, including Plaintiff Misty Whiteman and her attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

181.    Plaintiff Misty Whiteman and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

182.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

183.    As a direct result of said false representations by Medtronic, Plaintiff Misty Whiteman was injured as aforesaid.

## COUNT XXXV
### (Punitive Damages – Misty Whiteman)

184.    All of the allegations contained in Counts XXXI, XXXII, XXXIII, and XXXIV are realleged and incorporated herein by reference.

185.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Misty Whiteman's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless,

Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Misty Whiteman by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

WHEREFORE, Plaintiff Zoltan Bodas demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs;

WHEREFORE, Plaintiff Mickey Chambers demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs;

WHEREFORE, Plaintiff James A. Gray demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs;

WHEREFORE, Plaintiff Raymond Harris demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs;

WHEREFORE, Plaintiff Roland T. Hobdy demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs;

**WHEREFORE,** Plaintiff Larry E. Melzer demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs;

**WHEREFORE,** Plaintiff Misty Whiteman demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs.

Respectfully submitted,

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
Brandon J. Levine, #412130
Renee L. Robinson-Meyer, #455375
Steven J. Lewis, #472564
Benjamin J. Cooper, #502149
1320 19th Street, N.W., Suite 500
Washington, D.C. 20036
Phone: (202) 833-8040
Fax:    (202) 833-8046
aaronlevinelaw@aol.com

Counsel for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues of material facts.

Aaron M. Levine

30

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ZOLTAN BODAS,                          )
3438 West Vogel Avenue                 )
Phoenix, AZ 85051                      )          Civil Action No. _____
                                       )
        and                            )
                                       )
MICKEY CHAMBERS,                       )
1540 Loblolly Drive                    )
Axton, VA 24054                        )
                                       )
        and                            )
                                       )
JAMES A. GRAY,                         )
19749 Stansbury                        )
Detroit, MI 48235                      )
                                       )
        and                            )
                                       )
RAYMOND HARRIS,                        )
110 Fiddlers Cove                      )
Brunswick, GA 31523                    )
                                       )
        and                            )
                                       )
ROLAND T. HOBDY,                       )
Post Office Box 1303                   )
Ocoee, FL 34761                        )
                                       )
        and                            )
                                       )
LARRY E. MELZER,                       )
9059 Sea Lane, S.W.                    )
Sunset Beach, NC 28468                 )
                                       )
        and                            )
                                       )
MISTY WHITEMAN,                        )
5302 Royal Palm Avenue                 )
Sarasota, FL 34234                     )
                                       )
        Plaintiffs,                    )
                                       )
v.                                     )

```
                                    )
MEDTRONIC, INC.,                    )
710 Medtronic Parkway,              )
Minneapolis, MN, 55432              )
                                    )
                Defendant.          )
```

### AFFIDAVIT OF JAMES N. SPOLAR

I, James N. Spolar, having been duly sworn on oath, hereby depose and state as follows:

1.       I am Assistant Secretary for Medtronic, Inc.

2.       Medtronic, Inc. is a corporation organized and existing under the laws of the State of Minnesota.

3.       A true and correct copy of a certificate of good standing issued by the Minnesota Secretary of State's Office demonstrating that Medtronic, Inc. is in good standing as of the date of such certificate is attached hereto as Exhibit 1.

4.       Medtronic, Inc.'s principal place of business is located in the State of Minnesota, at 710 Medtronic Parkway, Minneapolis, Minnesota.

FURTHER AFFIANT SAYETH NOT.


_____
JAMES N. SPOLAR


Subscribed to and sworn
Before me this ____ day of
August, 2008

_____
Notary Public

LORNA KORRINE JOHNSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2011

## State of Minnesota

# SECRETARY OF STATE

Certificate of Good Standing

I, Mark Ritchie, Secretary of State of Minnesota, do
certify that:  The corporation listed below is a corporation
formed under the laws of Minnesota; that the corporation was
formed by the filing of Articles of Incorporation with the
Office of the Secretary of State on the date listed below; that
the corporation is governed by the chapter of Minnesota Statutes
listed below; and that this corporation is authorized to do
business as a corporation at the time this certificate is
issued.

Name: Medtronic, Inc.

Date Formed:  04/23/1957

Chapter Governed By:  302A

This certificate has been issued on 07/02/08.



*Mark Ritchie*
Secretary of State.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*ZOLTAN BODAS, ET AL*
Plaintiff

v.                                    Civil Action No.  **08 1442**

**AUG 1 9 2008**

*MEDTRONIC, INC*
Defendant

The above entitled action, removed from the Superior Court for the District of Columbia, has been filed and assigned to Judge **ROBERTS, J. RWR** All counsel and/or pro se litigants must include on any subsequent pleadings both the civil action number and the initials of the judge assigned to this action. (See preceding sentence for judge's initials).

Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the bar of this Court to appear, file papers or practice. To assist the Clerk's Office in properly recording all counsel of record, counsel for all parties must enter their appearance in accordance with our Local Rule 83.6(a). Timely compliance with this requirement will enable the Clerk's Office to ensure prompt delivery of notices and orders.

Finally, your attention is called to Local Rule 16.3, Duty to Confer. This rule clearly spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court on a wide range of questions.

NANCY MAYER-WHITTINGTON, CLERK

By *Maureen Higgins*
Deputy Clerk

cc: *AARON LEVINE*

929A
Rev. 7/02

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

Zoltan Bodas, Mickey Chambers, James A. Gray, Raymond Harris, Roland T. Hobdy, Larry E. Melzer, and Misty Whiteman

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF                Maricopa, AZ
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Aaron M. Levin
1320 19th Street, NW
Washington, DC 20036

**DEFENDANTS**

Medtronic, Inc.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT        Hennepin, MN
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

Case: 1:08-cv-01442
Assigned To : Roberts, Richard W.
Assign. Date : 8/19/2008
Description: PI/Malpractice

JURY ACTION

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 2 U.S. Government Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

◉ 4 Diversity
(Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

◉ **B.** *Personal Injury/Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☒ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E.** *General Civil (Other)*        **OR**        ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ⊘ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

28 U.S.C. Sections 1332(a)1, 1441(b) - diversity

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23    DEMAND $ 28,000,000.00   Check YES only if demanded in complaint
JURY DEMAND:  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ⊗  NO ☐   If yes, please complete related case form.

DATE 8/19/08    SIGNATURE OF ATTORNEY OF RECORD  *Diane M. Dorsett* 

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint.  You may select only one category.  You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.